IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MATTHEW CRIS MCLEOD-LOPEZ

Plaintiff

v.

JUAN ROSA ALGARIN, ET AL

Defendants

Civil No. 08-1315 (SEC)

**OPINION and ORDER**

Pending before this Court is Co-Defendants Pedro Toledo Dávila ("Toledo") and Juan A. Rosa Algarín's ("Rosa") (collectively "Defendants") motion to dismiss (Docket # 6), and Plaintiff Matthew Cris McLeod-López's ("Plaintiff") opposition thereto (Docket # 11). After reviewing the filings, and the applicable law, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**.

**Factual Background**

On March 14, 2008, Plaintiff filed the instant complaint under Sections 1983, 1986 and 1988 of the Civil Rights Act of 1964, 42 U.S.C. §§ 1983, 1986 & 1988, the Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments of the U.S. Constitution, Article II of the Commonwealth's Constitution, and Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5141, against Toledo, Rosa, various police officers, and other unnamed defendants, individually and in their personal capacity. Docket # 1.[1] Plaintiff seeks relief for the damages he suffered as a result of the alleged assault undertaken by members of the Puerto Rico Police Department during his arrest. Id.

---

[1] On December 31, 2008, Plaintiff filed an amended complaint, adding several defendants. Docket # 14.

Pursuant to the complaint, the facts are as follows. On March 19, 2007, while Plaintiff was with his common law wife, his son, nephew, and niece in his residence, located at Palmas de Cerro Gordo Housing Development, approximately fifteen police officers, including Rosa, arrived to serve a warrant for arrest for contempt charges. When Plaintiff opened the door, one of the police officers inquired as to McLeod-López's whereabouts, whereupon another police officer identified Plaintiff as McLeod-López. Plaintiff did not resist arrest. However, Rosa, and other officers, attacked and hit Plaintiff, while arresting him. The police officers hit and punched Plaintiff in the genital area, moved him out of his residence, and continued to beat him while he was handcuffed and lying on the floor. Subsequently, the officers entered, with Plaintiff, into his residence, and forced him to open a safe deposit box from which the officers allegedly took an estimated $3,000. During the arrest, Plaintiff was never informed about nor read his constitutional rights.

Plaintiff was then transported to the Criminal Investigation Center ("CIC") in Vega Baja. The police officers kept hitting and punching Plaintiff, until they arrived at said location. Plaintiff complained about severe pain in his genital area, abdomen, and back to the officers. Plaintiff remained in the CIC for approximately an hour, after which he was transported to the Hato Rey Police Headquarters, where he was put in a solitary cell, and left handcuffed. Plaintiff continued to complain about pain in his genital area. At around 4:00 am on March 20, 2007, a paramedic examined Plaintiff, and stated that "he was well." Docket # 14 at ¶ 23. At around 10:30 am, Plaintiff was transferred to the Diagnostic Treatment Center in Rio Piedras, where they ordered he be taken to the emergency room at the Rio Piedras Medical Center. At the Medical Center, Plaintiff underwent surgery to remove one of his testicles.

On March 21, 2007, Plaintiff was taken to the Bayamon Judicial Center, and charged with drug and weapons possession. The court found probable cause for said violations, and he

**CIVIL NO. 08- 1315 (SEC)**                                                                                  Page 3

was incarcerated at the Bayamon Correctional Facility. The charges were later dismissed due to lack of evidence.

On June 5, 2008, Defendants filed a motion requesting the dismissal of the case under FED. R. CIV. P. 12(b)(6). According to Defendants, all claims against them should be dismissed because: (1) they are entitled to Eleventh Amendment Immunity in their official capacity, (2) Toledo, in his personal capacity, is entitled to qualified immunity, (3) the respondeat superior doctrine does not apply to Toledo as a supervisor, (4) Plaintiff does not state a claim of supervisory liability under Section 1983, (5) the complaint does not state a claim of malicious prosecution, false arrest, and illegal seizure under the Fourth and Fourteenth Amendments, and (6) Plaintiff failed to state Fifth and Ninth Amendment claims. As a result of the foregoing, Defendants also move for the dismissal of all pendent state law claims.

**Standard of Review**

*Fed. R. Civ. P. 12(b)(6)*

To survive a Rule 12(b)(6) motion, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008). In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all of their "well-pleaded facts [and indulge] all reasonable inferences therefrom" in the plaintiff's favor. Id. Moreover, a court must determine "whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998) (citations omitted). The Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Davis v. Monroe County Bd. of Ed., 526 U.S. 629, 654 (1999) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

**CIVIL NO. 08- 1315 (SEC)**                                                                      Page 4

However, "[a]lthough this standard is diaphanous, it is not a virtual mirage." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)). Plaintiffs must rely in more than unsupported conclusions or interpretations of law, as these will be rejected. Id. That is, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." Parker v. Hurley, 514 F. 3d 87, 95 (1st Cir. 2008). Therefore, "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). The Court "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. As such, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle, 142 F.3d at 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999).

To survive a motion to dismiss at this stage, "it is enough for a plaintiff to sketch an actionable claim by means of a generalized statement of facts from which the defendant will be able to frame a responsive pleading." Langadinos v. American Airlines, Inc., 199 F.3d 68, 73 (1st Cir. 2000) (citing Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992) (internal citations omitted))). In so doing, "a plaintiff can make allegations *either* on the basis of personal knowledge or on 'information and belief.'" Id.

**Applicable Law and Analysis**

*Plaintiff's Section 1983 Claims*

**CIVIL NO. 08- 1315 (SEC)**                                                                                                              Page 5

Defendants' argue that Plaintiff failed to state a Section 1983 claim, and that the Section 1983 claims against those Defendants who are supervisors should be dismissed because there is no *respondeat superior* liability under said statute. Plaintiffs oppose dismissal on both fronts, arguing that they have included averments within their complaint sufficient to survive dismissal at this stage. This Court begins its discussion by addressing the familiar Section 1983 standard.

A claim under Section 1983 is established by demonstrating that a government official, acting under the color of state law, has caused the depravation of a federal right. Burke v. Town of Walpole, 405 F.3d 66, 76 (1st Cir. 2005)(citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)). Furthermore, a Plaintiff in a civil rights action must allege an injury to a cognizable interest, and that this injury is "...causally related to the challenged conduct," and can be redressed through the litigation in question. See Pagan v. Calderon, 448 F.3d 16, 27 (1st Cir. P.R. 2006). The conduct alleged to have caused the violation must also be intentional or recklessly indifferent to the plaintiff's federal statutory or constitutional right. Del Villar-Rosario v. P.R. DOJ, No. 06-2089, 2008 U.S. Dist. LEXIS 36059,*5 (D.P.R. Mar. 3, 2008); see also Gutierrez Rodriguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989); Simmons v. Dickhaut, 804 F.2d 182, 185 (1st Cir. 1986).

The First Circuit has held that "[i]n an action brought under §1983, supervisors are not automatically liable for the misconduct of those under their command." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000). However, a supervisor's liability "can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization." Whitfield v. Meléndez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005) (citing Camilo Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999)). Unless the supervisor directly participated in the deprivation of the plaintiff's constitutional rights, he may only be held liable if: "(1) the behavior of his subordinates results in a constitutional violation

**CIVIL NO. 08- 1315 (SEC)**                                                                                                  Page 6

and (2) the supervisor's action or inaction was affirmatively linked to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." Id. (quoting Hegarty v. Somerset County, 53 F.3d 1367, 1379-1380 (1st Cir. 1995)).[2]

Toledo avers that there are no allegations linking him to any of the facts set forth in the complaint. He further contends that he was brought into this suit exclusively because he is the Police Department's Superintendent. Upon reviewing the complaint, this Court notes that Toledo did not directly participate in the events which led to this suit, therefore, he can only be found liable if Plaintiff has first shown that his subordinates' behavior results in a constitutional violation. Taking as true all well-pleaded facts in the complaint, this Court finds that there could be several constitutional violations on the part of the police officers. As such, for purposes of this analysis, the answer to this first factor is in the affirmative.

Next, this Court must consider whether Toledo's actions or inactions were affirmatively linked to the police officer's behavior. Although the allegations against Toledo may be less specific than those regarding the arresting officers, they still pass muster under Rule 12(b)(6). Specifically, Plaintiff alleges that Toledo was responsible for Rosa's, and the other arresting officers' supervision, recruitment, the evaluation of their performance, and assuring that their

---

[2] Failure to train claims may, in appropriate circumstances, lead to an imposition of liability on a supervisor or a municipality. See Calvi v. Knox County, 470 F.3d 422, 429 (1st Cir. 2006) (liability will attach if "the municipality fails to provide adequate training notwithstanding an obvious likelihood that inadequate training will result in the violation of constitutional rights") (citing Whitfield, 431 F.3d at 10). However, an assertion that a supervisor "failed to train" his subordinates and that he should be held liable for such failure, without identifying the factual underpinnings of such failure, nor identifying the causal nexus between the failed training and the street-level misconduct, is not enough. See Rodríguez-Vázquez v. Cintrón-Rodríguez, 160 F. Supp. 2d 204 (D.P.R. 2001) (dismissing claims against Police Superintendent; broad and general allegations of inadequate training and supervision of the police force that are not linked to the particular defendants joined in the action insufficient to state a claim against the superintendent); Rodríguez-Esteras, 266 F. Supp. 2d 270 (dismissing failure to train claim against police superintendent for failure to plead minimum facts in support of such a claim).

**CIVIL NO. 08- 1315 (SEC)**                                                                                              Page 7

training was adequate. Moreover, Plaintiff avers Toledo "knew or should have known and identified the dangerous tendencies of said police officers and the threat that they represented..." Docket # 14 at ¶ 30. As such, he posits that Toledo had actual or, at least, constructive knowledge of the arresting officers' violent tendencies. Id. at ¶ 34. According to Plaintiff, Toledo's failure to train, supervise, evaluate, and discipline the arresting police officers, together with his failure to identify their violent nature during the implementation of the department's training and disciplinary system, shows a callous and reckless disregard, and deliberate indifference to Plaintiff's and all Puerto Rico citizens' rights. Id. A review of these, and the remaining averments within the complaint regarding Defendants, persuades this Court that Plaintiff has sufficiently pled a viable Section 1983 claim against them to survive a motion to dismiss.

Since Plaintiffs have pled the necessary elements for a Section 1983 claim against each of the Defendants, their motion to dismiss for failure to state a claim, and lack of supervisory liability, is **DENIED**.

*Plaintiff's Fifth Amendment Claims*

Because there are no federal actors in this case, Defendants argue that the Court should dismiss Plaintiff's Fifth Amendment claim. The Fifth Amendment provides that "[n]o person shall... be deprived of life, liberty, or property, without due process of law..." U.S. Const. amend. V; see also Gerena v. Puerto Rico Legal Services, 697 F. 2d 447, 449 (1st Cir. 1983). This amendment applies to actions of the federal government, not those of private individuals, or of state, local or municipal governments. Id. at 449; see also Martínez-Rivera v. Sánchez-Ramos, 498 F. 3d 3, 8 (1st Cir. 2007) (affirming dismissal of Plaintiffs' claims under the Fifth Amendment because the police officers where state actors and not federal actors). Because Plaintiff's complaint does not allege that any of the Defendants are federal actors; instead they

aver that they are state officials acting under color of state law (see, Docket # 12 ¶15 ), his claims pursuant to the Fifth Amendment are hereby **DISMISSED with prejudice.**

*Plaintiff's Eighth Amendment Claims*

The United States Supreme Court has stated that this amendment, applicable to the states through the Fourteenth Amendment, "prohibits the infliction of cruel and unusual punishments on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 296-97 (1991)(emphasis added); see also Martínez-Rivera, 498 F. 3d at 8. That is, the Eight Amendment only comes into play after there has been a formal adjudication of guilt, through a criminal prosecution, in accordance with due process of law. Martínez-Rivera, 498 F. 3d at 8 (stating that "because there had been no formal adjudication of guilt against [Plaintiffs] at the time of the alleged constitutional deprivation, the Eighth Amendment is inapplicable and any claim brought on that theory was properly dismissed.") The amendment also covers "deprivations that were not specifically part of the sentence but were suffered during imprisonment." Id. at 297. Furthermore, "only the unnecessary and wanton infliction of pain implicates the Eight Amendment." Id.

Plaintiff has not alleged that he was convicted and imprisoned, after a formal process of adjudication, and subjected to unnecessary and wanton infliction of pain as punishment. On the contrary, he states that all charges against him were dismissed for lack of evidence. Moreover, as this Court will discuss shortly, the Supreme Court has held that claims that law enforcement officers have used excessive force in the course of an arrest should be analyzed under the Fourth Amendment and its "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989); see also Tavarez-Guerrero v. Toledo-Davila, 573 F. Supp. 2d 507, 512 (D.P.R. 2008). Thus, the Eighth Amendment is inapplicable to the instant case. Therefore, Plaintiff's claims under the Eight Amendment are hereby **DISMISSED with prejudice.**

**CIVIL NO. 08- 1315 (SEC)**                                                                                             Page 9

*Plaintiffs' Ninth Amendment Claims*

In the complaint, Plaintiffs contend that Defendants also violated his Ninth Amendment rights. In turn, Defendants argue that the Ninth Amendment does not create a constitutional right or a private cause of action and, as a result, the before mentioned claims should be dismissed. The Ninth Amendment provides "that 'the enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people.'" U.S. Const. amend. IX.  The First Circuit Court has previously stated that the Ninth Amendment "does not create substantive rights beyond those conferred by governing law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 182 (1st Cir.1997); see also Gibson v. Matthews, 926 F.2d 532, 537 (6th Cir.1991). It "refers only to unenumerated rights, while claims under §1983 must be premised on specific constitutional guarantees." Bussey v. Phillips, 419 F. Supp.2d 569 (S.D.N.Y.2006); see also Khalid v. Reda, 2003 WL 42145, at p.6 (S.D.N.Y. 2003)(unpublished); Gibson, 926 F.2d at 537 (dismissing Plaintiffs' Ninth Amendment claim on the ground that "the ninth amendment does not confer substantive rights in addition to those conferred by other portions of our governing law."); DeLeón v. Little, 981 F. Supp. 728, 734 (D. Conn.1997) (holding that "the [Ninth Amendment] does not guarantee any constitutional right sufficient to support a claim under 42 U.S.C. §1983."). Because Plaintiffs' claim arise under Section 1983, that is, a section that requires a specific constitutional right violation, Plaintiff's Ninth Amendment claims are **DISMISSED with prejudice**.

*Plaintiffs' Fourteenth Amendment Claims*

Defendants argue that when a constitutional violation is covered by a particular statute, that specific provision must be applied, instead of the Fourteenth Amendment. Insofar as Plaintiff's claims are premised on Section 1983, they aver that Plaintiff cannot establish a substantive due process claim. In response, Plaintiff contends that, during his arrest, Defendants

used violence and excessive force, and invaded his privacy, in violation of the Fourth and Fourteenth Amendments.

Under the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. In order to establish a procedural due process claim under Section 1983, a plaintiff must first prove that he has a property interest as defined by state law and, second, that Defendants, acting under color of state law, deprived him of that property interest without a constitutionally adequate process. Logan v. Zimmerman Brush Co., 455 U.S. 422,428 (1982); PFZ Properties, Inc. v. Rodríguez, 928 F.2d 28, 30 (1st Cir. 1991). As previously stated, that test has been met here by Plaintiff. However, to meet the burden on a substantive due process cause of action, Plaintiff must "present a well-pleaded claim that a state actor deprived it of a recognized life, liberty, or property interest, and that he did so through conscience-shocking behavior." Estate of Bennett v. Wainwright, 548 F.3d 155, 162 (1st Cir. 2008) (citing Clark, 514 F.3d at 112; see also Ramos-Pinero v Puerto Rico, 453 F.3d 48, 53 (1st Cir. 2006) (stating that the "shock the conscience" standard implicates behavior "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience") (citing County of Sacramento v. Lewis, 523 U.S. 833, 848 n.8, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998))). Only "[b]ehavior 'intended to injure in some way unjustifiable by any government interest' - is the sort of official action most likely to 'shock the conscience.'" Ramos-Pinero, 453 F.3d at 53 (citations omitted). Plaintiff argues that he has shown that the defendants engaged in conscience-shocking behavior by beating him and stealing $3,000 from his safe deposit box, and as such, violated his substantive due process rights.

Plaintiff's substantive due process claim, premised on the deprivation of his liberty fails insofar as his claim is really an excessive force claim that should be, and is, brought under the

**CIVIL NO. 08- 1315 (SEC)**                                                                                           Page 11

Fourth Amendment. Wainwright, 548 F.3d at 163; see also Graham, 490 U.S. at 395. The Supreme Court has held that "all claims that law enforcement officers have used excessive force -- deadly or not -- in the course of ... [the] 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham, 490 U.S. at 395; see also Wainwright, 548 F.3d at 163. A "seizure" which entitles Plaintiff to "the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen...'" Graham, 490 U.S. at 395, n. 10 (citing Terry v. Ohio, 392 U.S. 1, 19, n. 16 (1968)). The Court further stated that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Id.; see also Albright v. Oliver, 510 U.S. 266, 273 (1994). Since an alternative constitutional claim is available in this case, Plaintiff's substantive due process claims on this front cannot prevail. See Wainwright, 548 F.3d at 163.

However, Plaintiff also alleges that the arresting police officers entered his home, without a search warrant, and took an estimated $3,000 from his safe deposit box. Docket # 14 at ¶ 19. The Supreme Court has held that "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998). As such, the Court has rejected imposing tort liability under the Fourteenth Amendment, and has held "that the Constitution does not guarantee due care on the part of state officials." Id. According to the Court, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. at 849. Although

**CIVIL NO. 08- 1315 (SEC)**                                                                                                       Page 12

deliberate indifference may also be sufficient to satisfy a due process claim, it must be equally shocking to conscience. Insofar as conduct "that shocks in one environment may not be so patently egregious in another, (the need to preserve) the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience-shocking." Id. at 850.

In the instant case, to equate the taking of $3,000 from Plaintiff's safe to such brutal conduct as a rape, a nearly two-month unlawful imprisonment, a shooting, a student blinded in one eye when a coach intentionally struck him in the head with a metal weight, a teacher's fabrication of sexual abuse charges against a father, resulting in loss of contact with his child for three years, a 57-day unlawful detention in the face of repeated requests for release, and police officers aiding a third-party in shooting the plaintiff, would be to lower the very high threshold for constitutional wrongdoing. See Cummings v. McIntire, 271 F.3d 341, 346 (1st Cir. 2001) (citations omitted). More so, when Plaintiff's claim of an unlawful search may be duly addressed under the Fourth Amendment. As such, Plaintiff's claims under the Fourteenth Amendment claims are **DISMISSED with prejudice**.ss

*Plaintiff's Fourth Amendment Claims*

In requesting the dismissal of Plaintiff's Fourth Amendment claims, Defendants aver that Plaintiff failed to establish a case of malicious prosecution, false arrest, and illegal seizure under the Fourth Amendment.[3] However, as previously stated, Plaintiff's claims stem from the

---

[3] Defendants also correctly assert that there is no "substantive due process right under the Fourteenth Amendment to be free of malicious prosecution." Cruz-Erazo v. Rivera-Montañez, 212 F.3d 617, 621 (1st Cir. 2000). Furthermore, they argue that a claim for malicious prosecution is properly addressed under state law. Notwithstanding, this Court notes that in order to establish a claim "for malicious prosecution, a plaintiff must show that 'criminal proceedings were initiated against him without probable cause and for an improper purpose and were terminated in his favor.'" Meehan v. Town of Plymouth, 167 F.3d 85, 88-89 (1st Cir. 1999) (citing Landrigan v. City of Warwick, 628 F.2d 736, 745 n.6 (1st Cir. 1980). Under Section 1983, a claim for malicious prosecution action, based upon a deprivation of Fourth Amendment rights, requires a showing of the absence

**CIVIL NO. 08- 1315 (SEC)**                                                                 Page 13

alleged beating undertaken by the arresting police officers, and the alleged taking of his monies from the safe deposit box, both of which are appropriately addressed under the Fourth Amendment.

The Fourth Amendment provides that citizens have a right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant officer employed force that was unreasonable under the circumstances. Jennings v. Jones, 499 F.3d 2, 11  (1st Cir. 2008); see Graham, 490 U.S. at 397. Whether the force used is reasonable "must be judged from the perspective of a reasonable officer on the scene." Graham, 490 U.S. at 396; see also Tavarez-Guerrero, 573 F. Supp.2d at 514. The reasonableness inquiry is objective, to be determined "in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. Moreover, "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," are of specific relevance. Id. at 396. This district has held that "[t]he use of excessive force or restraints that cause unnecessary pain or are imposed for a prolonged and unnecessary period of time are certainly unreasonable actions." Tavarez-Guerrero, 573 F. Supp.2d at 514.

---

of probable cause to initiate the proceedings. Id.  However, Plaintiff does not allege that he was arrested without probable case.  As such, a claim for malicious prosecution lacks merit.

**CIVIL NO. 08- 1315 (SEC)** <span style="float:right">Page 14</span>

---

In the complaint, Plaintiff specifies how the arrest, beating, and seizure were made. He doesn't deny there was a valid warrant for his arrest. However, Plaintiff alleges that the arresting police officers used violence and excessive force, despite the fact that he did not resist arrest, and that they took his money without a valid search warrant. Taking Plaintiffs' allegations as true, this Court concludes that he has pled a plausible entitlement to relief under the Fourth Amendment against Defendants. As such, Defendants' motion to dismiss the Fourth Amendment claim is hereby **DENIED.**

*Eleventh Amendment Immunity*

Defendants posit that the claims against them in their official capacities should be dismissed because the Police Department, as a Commonwealth agency, is entitled to Eleventh Amendment immunity. The Eleventh Amendment to the United States Constitution provides:

> [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S. Const. Am. XI.[4]

Although the Eleventh Amendment literally seems to apply only to suits against a State by citizens of another State, the Supreme Court has consistently extended the scope of this Amendment to suits by citizens against their own State. See Board of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356, 362 (2001); see also Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000); Hans v. Louisiana, 134 U.S. 1, 15 (1890). Although the Commonwealth of Puerto Rico is not a state, it enjoys the protection of the Eleventh Amendment. See Jusino-Mercado v. Commonwealth of Puerto Rico, 214 F.3d 34, 37 (1st Cir. 2000); Ortiz Feliciano v.

---

[4] The Supreme Court has established that the Eleventh Amendment protection primarily furthers two goals: the protection of a state's treasury and the protection of its dignitary interest of not being haled into federal court. Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & the Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 61 (1st Cir. 2003) (citing Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743 (2002)).

Toledo Dávila, 175 F.3d 37, 39 (1st Cir. 1999); Futura Development v. Estado Libre Asociado. 144 F.3d 7,12-13 (1st Cir. 1998); Culebras Enters. Corp. v. Rivera Ríos. 838 F.2d 506, 516 (1st Cir. 1987); Ramírez v. Puerto Rico Fire Servs., 715 F.2d 694, 697 (1st Cir. 1984).

However, the Eleventh Amendment immunity is not absolute and may be waived by the state or "stripped away" by Congress. Metcalf & Eddy v. P.R.A.S.A., 991 F.2d 935, 938 (1st Cir. 1993). There are four (4) circumstances in which the Eleventh Amendment protection unravels: (1) when a state consents to be sued in a federal forum; (2) when a state waives its own immunity by statute or the like; (3) when Congress abrogates state immunity ("so long as it speaks clearly and acts in furtherance of particular powers"); and (4) when, provided that circumstances allow, other constitutional imperatives take precedence over the Eleventh Amendment's protection. Id. at 938 (citations omitted). Despite number two above, the First Circuit has held that the fact that a state has waived its immunity to be sued does not automatically means that it waived its immunity in federal court. See Díaz-Fonseca v. Commonwealth of Puerto Rico, 451 F. 3d 13, 33 (1st Cir. 2006)(holding that although the Commonwealth waived its immunity to be sued in certain circumstances in its own courts, it did not waive its immunity to be sued in federal court).

The Eleventh Amendment bar extends to governmental instrumentalities which are an arm or "alter ego" of the State. See Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of P.R., 818 F.2d. 1034, 1036 (1st Cir. 1987); Ochoa Realty Corp. v. Faría, 618 F. Supp. 434, 435 (D.P.R. 1985); Pennhurst State Sch. Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 280-281 (1977); Ursulich v. P.R. Nat'l Guard, 384 F. Supp. 736, 737-38 (D.P.R. 1974). It also protects state officials in their official capacity. The rationale behind this extension of the Eleventh Amendment protection is that a claim against a state official in his or her official capacity for monetary relief is an action for the recovery of

**CIVIL NO. 08- 1315 (SEC)**                                                                                    Page 16

money from the State. Ford Motor v. Dept. of Treasury, 323 U.S. 459 (1945); Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Hence, a claim against a state official in her official capacity for monetary relief is, in essence, a claim against the State.

That the Puerto Rico Police Department is an arm or *alter ego* of Puerto Rico has been established by this district on numerous occasions.[5] See Nieves-Cruz v. Comm. of P.R., 425 F. Supp. 2d 188, 192 (D. P. R. 2006); López-Rosario v. Police Dept., 126 F. Supp. 2d 167, 170-171 (D. P.R. 2000); Aguilar v. Comm. of P.R., 2006 WL 3000765 at *1; Suárez-Cestero v. Pagán-Rosa, 996 F. Supp. 133, 142-43 (D.P. R. 1998). As such, this Court need not dwell on this point.

Notwithstanding the above, herein Defendants were sued in their personal and individual capacities as well, and not just in their official capacities. As such, Defendants' request for dismissal on this ground is **DENIED.**

*Qualified Immunity*

Defendants aver that under the doctrine of qualified immunity, they are immune from suit for money damages in their personal capacity. Specifically, Toledo argues that he did not violate Plaintiff's rights. He further contends that there are no specific factual allegations against him and, as such, this Court should dismiss the claims against him in his personal capacity.

Qualified immunity is an affirmative defense against personal liability which may be raised by state officials. Whitfield v. Meléndez-Rivera, 431 F. 3d 1, 6 (1st Cir. 2005). It "provides a safe harbor for public officials acting under the color of state law who would

---

[5] The Supreme Court requires a two-step analysis in order to determine whether a government institution is an arm or alter ego of the state and thus entitled to immunity under the Eleventh Amendment. Fresenius Med. Care, 322 F.3d at 65 (citing and discussing Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30 (1994)). First, the court must analyze how the state has structured the government institution and, second, if the "structural indicators point in different directions," the risk of the damages being paid from the public treasury should be assessed. Id. at 65-69.

**CIVIL NO. 08- 1315 (SEC)**  Page 17

otherwise be liable under 42 U.S.C. §1983 for infringing the constitutional rights of private parties." Id.; see also Anderson v. Creighton, 483 U.S. 635, 638 (1987). In determining whether a defendant is entitled to qualified immunity, courts shall apply a three-part test: (1) whether the plaintiff has alleged a constitutional violation; (2) whether the law was clearly established that defendants' action violated a constitutional right of the plaintiff; and (3) whether a reasonable official would have understood that his actions violated a constitutional right." Rivera-Jiménez v. Pierluisi, 362 F. 3d 87, 93 (1st Cir. 2004); Jennings, 499 F.3d at 11.

At this stage, this Court has concluded that Plaintiff has pled a viable Section 1983 cause of action against Defendants. Therefore, this Court cannot conclude that Plaintiff has failed to allege that Defendants violated his constitutional rights. Moreover, according to the facts of the complaint, Toledo should have understood that his actions or omissions constituted a violation of Plaintiff's constitutional rights. This Court finds that a reasonable official would not have believed that the acts committed by the arresting police officers were lawful in light of clearly established law. Moreover, any reasonable police officer is aware that it is unlawful to use violence and excessive force when arresting an individual, especially when the Plaintiff did not resist arrest. At this point, this Court cannot conclude, without making factual determinations, that Toledo acted reasonably under the circumstances and is entitled to qualified immunity. It remains to be seen whether his acts or omissions violated Plaintiff's constitutional rights. Therefore, at this stage, this Court is unable to conclude that Toledo is entitled to qualified immunity, and his motion to dismiss on this ground is **DENIED.**

*Supplemental Law Claims*

Finally, Defendants request that this Court dismiss the claims brought pursuant to it supplemental jurisdiction because dismissal of said claims is proper once all federal claims have

**CIVIL NO. 08- 1315 (SEC)**                                                                                    Page 18

been disposed of. However, since Plaintiff's federal claims have not been dismissed, their request is **DENIED**.

This Court reminds the parties that all representations to the court, submitted to the court through pleadings, motions, and any other document, are bound by FED. R. CIV. P. 11(b)'s mandate. Therefore, all claims, defenses, and other legal arguments that are unwarranted by existing law, are, in fact, frivolous, and can be sanctioned by the courts. In the instant case, both Plaintiffs and Defendants have set forth unwarranted legal arguments, insofar as the current case law is extremely clear as to the applicable statutes in cases such as this one. The methodic inclusion of numerous allegations and defenses is unjustified, and unnecessarily onerous for the courts. Therefore, the parties shall take the foregoing into consideration when appearing before this Court, or face the imposition of sanctions.

**Conclusion**

Based on the foregoing, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**, and Plaintiff's Fifth, Eighth, Ninth and Fourteenth Amendment claims are **DISMISSED with prejudice**.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 23rd day of March, 2009.

*S/Salvador E. Casellas*
Salvador E. Casellas
U.S. District Judge